**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**Western Divi**

| | | |
|---|---|---|
| CHRISTOPHER FALZONE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: 5:26-cv-780 |
| | ) | |
| v. | ) | |
| | ) | COMPLAINT FOR DAMAGES AND REINSTATEMENT |
| AT&T MOBILITY LLC, | ) | |
| | ) | |
| Defendant. | ) | JURY DEMAND ENDORSED HEREIN |
| | ) | |
| | ) | |
| Serve:<br>CT Corporation System<br>160 Mine Lake Ct Ste 200<br>Raleigh, NC 27615-6417 | ) | |
| | ) | |
| Courtesy copy to:<br>At&T Mobility LLC<br>1025 Lenox Park Blvd NE<br>Atlanta GA 30319-5309 | ) | |

Plaintiff Christopher Falzone ("Plaintiff"), by and through counsel, complains of Defendant

AT&T Mobility LLC ("AT&T" or "Defendant"), and alleges as follows:

**PARTIES**

1. Plaintiff, Christopher Falzone ("Plaintiff"), is a resident of Wake County, North Carolina.

2. Plaintiff was employed by Defendant AT&T Mobility LLC ("AT&T" or "Defendant") in Durham, North Carolina.

3. Defendant AT&T Mobility LLC is a foreign limited liability company authorized to conduct business in the State of North Carolina and may be served through its registered agent authorized to accept service of process.

4. At all relevant times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964 and employed the requisite number of employees to be subject to liability under that statute.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

6. This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1981, and 28 U.S.C. § 1331.

7. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

8. Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred within this District.

9. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Middle District of North Carolina.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff timely filed Charge of Discrimination No. 433-2025-04395 with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, sex discrimination, and retaliation arising from Defendant's conduct.

11. Plaintiff fully cooperated with the EEOC during its investigation.

12. On or about July 9, 2026, the EEOC issued Plaintiff a Notice of Right to Sue.

13. Plaintiff has timely commenced this action within ninety (90) days of his receipt of the Notice of Right to Sue.

14. Plaintiff has exhausted all administrative remedies with respect to his Title VII claims.

15. Plaintiff's claims under 42 U.S.C. § 1981 are not subject to any administrative exhaustion requirement.

16. All conditions precedent to maintaining this action have been satisfied.

## FACTUAL ALLEGATIONS

17. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

18. Plaintiff is a Caucasian male.

19. At all relevant times, Plaintiff was employed by Defendant as a Business Account Executive in Durham, North Carolina.

20. Plaintiff was responsible for selling Defendant's products and services to business customers and performing the duties associated with his position.

21. Plaintiff possessed the experience, qualifications, skills, and ability necessary to successfully perform the essential functions of his position.

22. Throughout his employment, Plaintiff sought to satisfy Defendant's legitimate performance expectations and remain employed with Defendant.

23. During the relevant period, Defendant employed Zoe, Asia, and other employees who held substantially similar sales positions.

24. Plaintiff observed that certain African-American female employees were treated more favorably than Plaintiff and other similarly situated male employees.

25. Specifically, Plaintiff observed that employees Zoe and Asia, both African-American females who held substantially similar sales positions, failed to meet sales expectations for approximately eight to nine months but nevertheless were afforded transfer opportunities, additional support, training, and continued employment.

26. Plaintiff requested the opportunity to transfer into other positions within Defendant's organization.

27. Defendant denied Plaintiff the same transfer opportunities that were provided to Zoe, Asia, and other similarly situated employees.

28. Plaintiff was informed that transfer opportunities were unavailable to him despite Defendant providing transfer opportunities to other employees.

29. Plaintiff observed that similarly situated African-American female employees received opportunities, support, training, accommodations, and retention efforts that were not provided to Plaintiff.

30. Plaintiff further observed that other male employees, including Cosby, were denied transfer opportunities and retention efforts that Defendant afforded to similarly situated female employees.

31. Plaintiff became concerned that Defendant was making employment decisions based upon race and sex rather than qualifications, performance, and legitimate business considerations.

32. During the course of his employment, Plaintiff communicated concerns regarding disparate treatment and Defendant's employment practices.

33. Plaintiff raised concerns regarding the more favorable treatment afforded to African-American female employees who had failed to meet performance expectations.

34. Plaintiff specifically questioned Defendant's refusal to provide Plaintiff with transfer opportunities that were made available to female employees.

35. Plaintiff complained that employees who were not Caucasian males were receiving opportunities, accommodations, and retention efforts that were denied to Plaintiff.

36. Defendant's Human Resources personnel became aware of Plaintiff's complaints and concerns.

37. Plaintiff reasonably believed that Defendant was treating employees differently based upon race and sex.

38. On or about March 28, 2025, Plaintiff made a formal complaint to Defendant's Human Resources Department concerning Defendant's treatment of employees and Defendant's refusal to provide Plaintiff transfer opportunities that had been provided to other employees.

39. During the complaint process, Plaintiff identified comparators and specifically questioned why African-American female employees received transfer opportunities despite prolonged performance deficiencies.

40. During Plaintiff's complaint, Human Resources representatives acknowledged that Defendant's transfer policy generally permitted transfers and questioned why certain employees had been afforded transfer opportunities that were not extended to Plaintiff.

41. Plaintiff opposed conduct that he reasonably believed constituted unlawful race and sex discrimination.

42. Defendant was aware that Plaintiff had complained about race discrimination, sex discrimination, and unequal treatment.

43. Plaintiff's complaint constituted protected activity under federal law.

44. Shortly after Plaintiff engaged in protected activity, Defendant subjected Plaintiff to adverse employment action.

45. On or about March 31, 2025, only three days after Plaintiff complained to Human Resources, Defendant terminated Plaintiff's employment.

46. Defendant informed Plaintiff that his employment was ending and separated him from employment effective immediately.

47. Plaintiff contends that Defendant's stated reasons for the termination were false, inconsistent, and pretextual because Defendant denied Plaintiff transfer opportunities afforded to similarly situated African-American female employees, retained those employees despite extended performance deficiencies, and terminated Plaintiff shortly after he complained about discriminatory treatment.

48. Defendant retained employees outside Plaintiff's protected classifications and continued providing opportunities to those employees.

49. Upon information and belief, employees who received transfer opportunities remained employed despite performance deficiencies similar to or greater than those attributed to Plaintiff.

50. Plaintiff was denied the same employment opportunities that Defendant provided to African-American female employees.

51. Plaintiff was not afforded the same opportunity to transfer to another position despite requesting such consideration.

52. The more favorable treatment afforded to similarly situated African-American employees supports the inference that Defendant's actions were motivated, in whole or in part, by Plaintiff's race.

53. The more favorable treatment afforded to similarly situated female employees supports the inference that Defendant's actions were motivated, in whole or in part, by Plaintiff's sex.

54. Defendant knew that Plaintiff had complained about discrimination before deciding to terminate his employment.

55. The close temporal proximity between Plaintiff's complaint and Defendant's decision to terminate his employment supports an inference of retaliatory motive.

56. Defendant's treatment of Plaintiff differed materially from its treatment of similarly situated African-American female employees.

57. Defendant's actions interfered with Plaintiff's employment opportunities, continued employment, advancement opportunities, compensation, and other benefits of employment.

58. Plaintiff was qualified to continue performing his job duties at the time of his termination.

59. Defendant's stated business reasons do not adequately explain the disparate treatment Plaintiff experienced.

60. At all relevant times, Plaintiff had a contractual employment relationship with Defendant and was entitled to enjoy the benefits, privileges, terms, conditions, and opportunities of that relationship free from race discrimination.

61. As a direct and proximate result of Defendant's actions, Plaintiff lost wages, salary, bonus compensation, benefits, and other forms of remuneration.

62. Plaintiff has suffered emotional distress, embarrassment, humiliation, inconvenience, stress, and other compensable injuries.

63. Plaintiff has incurred and will continue to incur economic and non-economic damages.

64. Defendant acted intentionally, willfully, maliciously, and/or with reckless disregard for Plaintiff's federally protected rights.

65. Defendant's conduct was a direct and proximate cause of Plaintiff's damages and injuries.

**COUNT I: Race Discrimination (Title VII)**

66. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

67. Plaintiff is a member of a protected class because he is Caucasian.

68. Plaintiff was qualified for his position and satisfactorily performed his job duties.

69. Defendant subjected Plaintiff to adverse employment actions, including the denial of transfer opportunities and the termination of his employment.

70. Defendant treated similarly situated non-Caucasian employees more favorably than Plaintiff.

71. Defendant provided transfer opportunities, retention efforts, additional support, and continued employment to African-American employees while denying Plaintiff similar opportunities.

72. Defendant's actions were motivated, in whole or in part, by Plaintiff's race.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

74. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended.

**COUNT II: Race Discrimination (42 U.S.C. § 1981)**

75. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

76. Plaintiff is Caucasian and is entitled to the protections of 42 U.S.C. § 1981.

77. Plaintiff had a contractual employment relationship with Defendant and was entitled to enjoy all benefits, privileges, terms, conditions, and opportunities of that relationship free from race discrimination.

78. Defendant impaired Plaintiff's right to make, perform, enforce, modify, and enjoy the benefits and privileges of his employment relationship on equal terms.

79. Throughout Plaintiff's employment, Defendant intentionally subjected Plaintiff to disparate treatment because of his race.

80. Defendant denied Plaintiff employment opportunities and transfer opportunities that it provided to similarly situated African-American employees.

81. Defendant's stated reasons for its actions were false, inconsistent, and pretextual.

82. Race was a but-for cause of Defendant's decision to deny Plaintiff opportunities and terminate his employment.

83. Defendant intentionally interfered with Plaintiff's contractual employment relationship because of his race in violation of 42 U.S.C. § 1981.

84. As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff suffered damages and is entitled to recover compensatory damages, punitive damages, equitable relief, attorneys' fees where permitted by law, costs, interest, and all other relief available at law or in equity.

85. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

## **COUNT III: Sex Discrimination (Title VII)**

86. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

87. Plaintiff is a member of a protected class because he is male.

88. Plaintiff was qualified for his position and satisfactorily performed his job duties.

89. Defendant subjected Plaintiff to adverse employment actions, including the denial of transfer opportunities and the termination of his employment.

90. Defendant treated similarly situated female employees more favorably than Plaintiff.

91. Female employees who failed to meet performance expectations were afforded transfer opportunities, additional support, retention efforts, and continued employment while Plaintiff was denied similar opportunities.

92. Defendant's actions were motivated, in whole or in part, by Plaintiff's sex.

93. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

94. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended.

**COUNT IV: Retaliation (Title VII)**

95. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

96. Plaintiff engaged in protected activity by opposing and complaining about race discrimination, sex discrimination, and unequal treatment.

97. Plaintiff specifically complained to Defendant's Human Resources Department regarding the more favorable treatment afforded to African-American female employees and Defendant's refusal to provide Plaintiff transfer opportunities.

98. Defendant was aware of Plaintiff's protected activity.

99. Shortly after Plaintiff engaged in protected activity, Defendant terminated his employment.

100. The temporal proximity between Plaintiff's complaints and Defendant's decision to terminate his employment supports a causal connection between Plaintiff's protected activity and the adverse employment action.

101. Defendant's actions would dissuade a reasonable employee from engaging in protected activity.

102. Defendant retaliated against Plaintiff because he opposed and complained about unlawful discrimination.

103. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages.

104. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended.

**COUNT V: Retaliation (42 U.S.C. § 1981)**

105. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

106. Plaintiff engaged in protected activity by opposing what he reasonably believed to be race discrimination.

107. Plaintiff complained that African-American employees were receiving preferential treatment and opportunities not afforded to Plaintiff.

108. Defendant was aware of Plaintiff's complaints concerning race discrimination.

109. Shortly after Plaintiff engaged in protected activity, Defendant terminated his employment.

110. There is a causal connection between Plaintiff's protected activity and Defendant's decision to terminate his employment.

111. Defendant retaliated against Plaintiff because he opposed race discrimination and complained of unequal treatment.

112. Defendant's conduct violated 42 U.S.C. § 1981.

113. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages.

**COUNT VI: Wrongful Discharge in Violation of North Carolina Public Policy (Race Discrimination)**

114. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

115. North Carolina has a clear public policy against discrimination on the basis of race.

116. Defendant terminated Plaintiff because of his race.

117. Defendant's termination of Plaintiff violated the public policy of the State of North Carolina.

118. As a direct and proximate result of Defendant's wrongful discharge, Plaintiff suffered damages.

**COUNT VII: Wrongful Discharge in Violation of North Carolina Public Policy (Sex Discrimination)**

119. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

120. North Carolina has a clear public policy against discrimination on the basis of sex.

121. Defendant terminated Plaintiff because of his sex.

122. Defendant's termination of Plaintiff violated the public policy of the State of North Carolina.

123. As a direct and proximate result of Defendant's wrongful discharge, Plaintiff suffered damages.

**COUNT VIII: Wrongful Discharge in Violation of North Carolina Public Policy**

**(Retaliation)**

124. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

125. North Carolina has a clear public policy protecting employees who oppose unlawful discrimination.

126. Plaintiff engaged in conduct protected by North Carolina public policy when he opposed race discrimination, sex discrimination, and unequal treatment.

127. Defendant terminated Plaintiff because he opposed and complained about race discrimination, sex discrimination, and unequal treatment in the workplace.

128. Defendant's termination of Plaintiff violated the public policy of the State of North Carolina.

129. As a direct and proximate result of Defendant's wrongful discharge, Plaintiff suffered damages.

**Damages**

130. Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

131. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages.

132. Plaintiff has lost wages, salary, commissions, bonus compensation, benefits, retirement contributions, and other forms of compensation as a result of Defendant's actions.

133. Plaintiff is entitled to recover back pay for all wages, compensation, benefits, and other remuneration lost as a result of Defendant's unlawful conduct.

134. Plaintiff is entitled to recover front pay in lieu of reinstatement to the extent reinstatement is not feasible, practical, or appropriate.

135. Plaintiff has suffered emotional distress, humiliation, embarrassment, mental anguish, inconvenience, frustration, and other non-economic damages as a result of Defendant's conduct.

136. Plaintiff has suffered damage to his professional reputation, career opportunities, and future earning capacity.

137. Plaintiff has incurred and will continue to incur attorneys' fees, litigation expenses, and costs recoverable under applicable law.

138. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

139. As a result of Defendant's intentional and unlawful conduct, Plaintiff is entitled to recover compensatory damages and punitive damages under Title VII and 42 U.S.C. § 1981 to the fullest extent permitted by law.

140. Plaintiff is further entitled to recover prejudgment interest, post-judgment interest, equitable relief, reinstatement or front pay, attorneys' fees, costs, expenses, and all other legal and equitable relief available under applicable federal and North Carolina law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Christopher Falzone respectfully requests that the Court enter judgment in his favor and against Defendant AT&T Mobility LLC and award the following relief:

A. A declaration that Defendant's acts, policies, practices, decisions, and conduct violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and the public policy of the State of North Carolina;

B. Reinstatement to Plaintiff's former position, or to a substantially equivalent position, with all seniority, benefits, compensation, privileges, and rights Plaintiff would have possessed absent Defendant's unlawful conduct;

C. In the alternative, an award of front pay in an amount to be determined at trial should reinstatement be deemed infeasible, impracticable, or inappropriate;

D. Back pay, including all lost wages, salary, commissions, bonuses, incentive compensation, retirement contributions, stock awards, benefits, and all other compensation and remuneration lost as a result of Defendant's unlawful conduct;

E. Compensation for lost future earnings, lost earning capacity, lost employment opportunities, lost career advancement opportunities, and damage to Plaintiff's professional reputation;

F. Compensatory damages for emotional distress, humiliation, embarrassment, inconvenience, mental anguish, stress, loss of enjoyment of life, and other non-economic damages resulting from Defendant's unlawful conduct;

G. Punitive damages pursuant to Title VII and 42 U.S.C. § 1981 because Defendant acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights;

H. Prejudgment interest and post-judgment interest as permitted by law;

I. Reasonable attorneys' fees, expert witness fees, litigation expenses, and costs pursuant to Title VII, 42 U.S.C. § 1988, and all other applicable provisions of law;

J. An award of all taxable and non-taxable costs incurred in prosecuting this action;

K. Expungement, withdrawal, or removal of any adverse, discriminatory, retaliatory, or otherwise negative references, disciplinary actions, performance documentation, memoranda, evaluations, or personnel-file records arising from the conduct alleged herein;

L. An order requiring Defendant to provide neutral employment references concerning Plaintiff;

M. Such equitable relief as the Court deems necessary and appropriate to eliminate the effects of Defendant's unlawful employment practices and to make Plaintiff whole;

N. Trial by jury on all issues so triable; and

O. Such other and further legal and equitable relief as the Court deems just, proper, and appropriate.

Respectfully submitted this the 7th day of October, 2026.

/s/ M. Janelle Lyons, Esq.
M. Janelle Lyons, NC Bar No. 35421
SPITZ, THE EMPLOYEE'S LAW FIRM
6135 Park South Drive, Suite 590
Charlotte, NC 28210
Phone: (980) 332-4688
Fax: (216) 291-5744
Email: Janelle.lyons@spitzlaw.com

*Attorneys For Plaintiff*

**JURY DEMAND**

Plaintiff demands a trial by jury by the maximum number of jurors permitted.

/s/ *M. Janelle Lyons*
M. Janelle Lyons, N.C. Bar No.35421